German Exchange Bank agt. Board of Commissioners of Excise.

## SUPREME COURT.

THE GERMAN EXCHANGE BANK agt. THE BOARD OF COMMISSIONERS OF EXCISE and others.

*Interpleader.*

A bank may interplead parties making conflicting and adverse claims to moneys and property held by it on deposit.

A bank or other agent would not be justified in commencing an action of interpleader upon any and every claim made by others to moneys deposited with it by a dealer; but whenever it is a matter of doubt to which of the defendants the fund, in the complainant's hands, actually belongs, so that he cannot safely pay to either, a bill of interpleader may be filed.

Where, by operation of law through a change of public officers, the title to moneys held by them, as such, is substantially changed, the person with whom the funds are deposited, may, when there are contesting claims arising from such change, interplead the parties, so that the funds may reach the proper hands.

*Special Term, March,* 1879.

*Barlow & Olney,* for plaintiff.

*Burton N. Harrison,* for defendant Patterson.

*T. E. Tomlison,* for defendant.

*W. C. Whitney,* for the mayor, &c., of New York.

*M. Diefendorf,* for commissioners of excise.

VAN VORST, J. — I think that this action, which is one of strict interpleader, is well brought. It is supposed by the counsel for some of the defendants that a bank cannot maintain such action, but must unalterably respond to the person who made the deposit. But it will be found, upon examina-

tion, that a bank is not precluded from bringing such action when conflicting claims are made to moneys or property held by it on deposit; but, otherwise, upon general principles of equity jurisprudence, a bank may be entitled to relief by a bill of interpleader against separate and adversary claims of parties to the moneys or properties deposited (*City Bank of N. Y.* agt. *Skelton*, 2 *Blachford's C. C. R.*, 14, *per* BETTS, J.).

When the adverse claim is created by the act of the principal, as by an assignment, equitable or legal, or by operation of law, as by assignment in bankruptcy, an agent may question the title of his principal so far as by interpleader to bring the rights of the respective claimants before a court of equity for adjudication (*Story Eq. Jurisp.*, secs. 808, 813*b*, 817).

And where, by operation of law, through a change of public officers, the title to moneys held by them, as such, is substantially changed, the person with whom the funds are deposited may, in reason, when there are contesting claims arising from such change, interplead the parties, so that the funds may reach the proper hands.

In the case under consideration, the defendants, Morton and Patterson, were commissioners of excise, the former being president of the board, and the latter its treasurer. They opened an account in the plaintiff's bank, in which to deposit moneys received by them.

The tickets accompanying the deposits disclose that the moneys were deposited by the board of excise. The account on the plaintiff's books was opened with such board, and the passbook of such defendants, which contains entries of the deposits, was indorsed with the names of G. W. Morton, president, and Jacob M. Patterson, Jr., treasurer, commissioners of excise, and the account was headed inside the book, "Board of Excise Commissioners in account with the German Exchange Bank." On the morning of the day the account was opened, the bank was notified that all checks and drafts made for or on account of the board of excise should be signed by the treasurer, Patterson, and countersigned by the president, Mor-

ton. However, the fact in truth was, in regard to the moneys which entered into this account, there was enough in the way in which the deposits were received and entered, and in this notification, to induce a belief on the part of the bank that the moneys were public and not private funds, and were held officially by these parties.

- Patterson afterwards, and in January, resigned his office as commissioner, a considerable sum of money still standing to the credit of this account. On the 26th of January, 1878, the defendants, Merkle and Morrison, were appointed commissioners.

The governor of the state afterwards, by his warrant, removed Morton from his office. Although the validity of this removal is questioned by him, Morton has not, in fact, since the warrant of his removal was issued, performed the duties of the office. The defendants, Merkle and Morrison, have acted as commissioners, and have continued the account with the plaintiff's bank, by making deposits therein.

Merkle and Morrison have forbidden the bank to pay the money to Patterson and Morton, and the latter demanded it. I do not deem it necessary to examine the validity of these respective claims, nor do I think that the plaintiff should be called upon to determine which of the contesting parties is entitled thereto.

From the general nature of these adverse claims, the plaintiff should not be called upon to settle the controversy, by paying one party and exposing itself to an action from the other (*Bleeker* agt. *Graham*, 2 *Edw. Chy.*, 647; *Badeau* agt. *Tyler*, 1 *Sandf. Chy.*, 270).

Morton, through the action of the governor for his removal, has ceased to exercise the duties of president of the board, and Patterson, when he gave up his office, was no longer treasurer. And from the form in which the deposits were made, and the entries in the pass-book, the bank may reasonably entertain a question, under the facts and circumstances existing, as to whether Morton and Patterson are entitled to

draw any part of the moneys deposited, especially so, after having been notified of the claims of the present commissioners, Merkle and Morrison.

It is true that a bank or other agent would not be justified in commencing an action of interpleader upon any and every claim made by others to moneys deposited with it by a dealer.

A bank is in general under a duty to recognize and pay the claims of a depositor.

It may be conceded that actions of this character are not to be encouraged and should be dismissed, if there exist any means of adjusting the claims with safety to the holder of the funds (*Bedell* agt. *Hoffman*, 2 *Paige*, 199). To sustain such action it must appear that the plaintiff has good reason to believe that the adverse claim is well founded, and that unless the court protects him he will be exposed to loss.

When a depositor has, however, parted with or ceased to have an interest in the deposit, and others have succeeded to his rights by his act or through the operation of law, the bank would not be justified, upon being notified of the facts and of the adverse claim, in paying the depositor (*Marvin* agt. *Elwood*, 11 *Paige*, 365; *Balchen* agt. *Crawford*, 1 *Sandf. Chy.*, 380). And whenever it is a matter of doubt to which of the defendants the fund, in the complainant's hands, actually belongs, so that he cannot safely pay to either, a bill of interpleader may be filed (*Bell* agt. *Hunt*, 3 *Barb. Chy. R.*, 391).

The rule that a bailee or agent cannot, in an action at law, dispute the original title of the person from whom he received the property, and cannot interplead the depositor with a stranger who claims the property by a distinct and independent title, has no application in this action.

The claims of these adverse parties to the funds in question do not arise under distinct and independent titles. In a true sense they each claim through the same title, and the question is, which is the rightful claimant? *Swartwout* agt. *Mechanics' Bank* (5 *Denio*, 555) was not a case of interpleader. The

Rathbun *et al.* agt. Citizens' Steamboat Company of Troy.

defendant set up as a defense that the money belonged to the United States and not to the depositor. It did not appear that the United States claimed the money.

The court, however, said that if it could be shown that the money belonged to the United States the plaintiff could recover. *Lund* agt. *The Seamen's Savings Bank* (37 *Barb.*, 129), cited by the defendants, does not, in its facts, appear to be in point.

The plaintiff, in its complaint, offers to pay the moneys into court, and should be allowed to do so, deducting from the funds in its hands a reasonable allowance, to be determined by the court, for its costs and counsel fees, and the defendants be allowed among themselves to contest the question as to which is entitled to the moneys. The parties, by their counsel, should appear before me on Monday, April seventh, at 1 o'clock P. M., at special term, when the facts preparatory to a formal decision will be settled.